# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TRINA LYONS, | No. 57453-5-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES | |
| Respondent. | |

CHE, J. — Trina Lyons appeals a summary judgment ruling in favor of the Washington State Department of Social and Health Services (DSHS) dismissing her claims for breach of an employment contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing.

Lyons applied for an investigator position within Adult Protective Services (APS), a division of DSHS. DSHS orally offered Lyons the position subject to a clear background check. Various emails evidence this oral agreement. The background check later revealed that Lyons had a previous felony fraud related conviction. Lyons explained that it had been expunged. On November 23, 2016, DSHS informed Lyons by both phone call and in a signed letter that it would not hire her.

No. 57453-5-II

Lyons brought a lawsuit in federal court against DSHS with the following claims: violation of Title VII of the Civil Rights Act of 1964, violation of the Washington Law Against Discrimination, chapter 49.60 RCW, breach of contract, promissory estoppel, and negligence. The federal district court granted summary judgment against Lyons. Lyons then brought the present action against DSHS on June 25, 2021. DSHS moved for summary judgment arguing that Lyons's claims were beyond the three-year statute of limitations for actions based on oral contracts under RCW 4.16.080(3) and were barred under the doctrine of claim preclusion. The trial court granted summary judgment and Lyons appeals.

We hold Lyons's claims for breach of an employment contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing are not based on a contract in writing or liability express or implied arising out of a written agreement under RCW 4.16.040(1), and Lyons's actions are barred by the three-year statute of limitations under RCW 4.16.080(3). We decline to reach the claim preclusion issue and affirm the grant of summary judgment.

FACTS

In September 2016, APS, a division of DSHS, posted a job listing for a "Social Specialist III/Investigator." Clerk's Papers (CP) at 58. The prospective employee would independently investigate allegations of "abandonment, abuse, financial exploitation, neglect, and self-neglect of vulnerable adults." CP at 58. DSHS policy required that all applicants complete a background check.

Lyons applied for the position and interviewed with APS twice. In November 2016, Sarah Walker, DSHS APS Supervisor, emailed Lyons requesting a background check. And Lyons emailed Walker asking about a prospective start date.

2

Around November 14, Walker called Lyons to inform her that her hire was conditionally approved contingent on a "clear background check."[1] CP at 59. Walker alleged that she likely discussed a potential salary and start date with Lyons, but Walker maintained, "I was clear and made sure [Lyons] understood the offer was not yet final and was pending the results of the background check process." CP at 59-60. The same day, Lyons emailed Walker requesting employment verification for rental purposes, which Walker did not send.

On November 17, Lyons asked, via e-mail, where she should report to work on December 1. Walker told her where and when to report. But Walker also reminded her that her employment offer was contingent on review of the background check. Sometime that day, DSHS human resources informed Walker about a concern with the background check.

DSHS learned that Walker was convicted of a fraud crime in 1988. That conviction appears to have been expunged in 2010. On November 23, the regional administrator of APS informed Walker that the agency was denying employment to Lyons. On the same day, Walker called Lyons to notify her of the decision. Walker also signed and sent a letter titled, "Notification of Hiring Decision," to Lyons, which stated, "In accordance with the Washington Federation of State Employees (WFSE) Collective Bargaining Agreement, this letter is to thank you for your participation in the interview process for the position . . . and to notify you that another candidate has been selected." CP at 69.

The WFSE Collective Bargaining Agreement (CBA) required various state agencies, including DSHS, to post a recruiting announcement for bargaining unit positions. The CBA

---

[1] The background check included a character, competency, and suitability review, then required approval by the hiring authority and human resources. Human resources would then send a new hire letter to the applicant.

No. 57453-5-II

generally applied to "employees in . . . 'Bargaining Units Represented by the Washington Federation of State Employees.'" CP at 123.

On June 30, 2017, Lyons filed a required tort claim form notifying the State of Washington of a tort claim. It does not appear that the State responded. And on October 26, 2018, Lyons brought a lawsuit against DSHS in federal court for violating Title VII, violating the Washington Law Against Discrimination, breach of contract, promissory estoppel, and negligence. On February 19, 2020, the federal district court granted DSHS's motion for summary judgment dismissing Lyons's claims with prejudice. The district court granted summary judgment as to the state law claims due to DSHS's immunity to state law claims in federal court under the Eleventh Amendment to the federal constitution.

On June 25, 2021, Lyons brought a lawsuit against DSHS in state court for breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing. DSHS moved for summary judgment arguing that Lyons's claims are barred by the oral contract statute of limitations in RCW 4.16.080(3) and by the doctrine of claim preclusion. The trial court granted summary judgment against Lyons.

Lyons appeals.

ANALYSIS

I. STATUTE OF LIMITATIONS

We review grants of summary judgment de novo. *DePhillips v. Zolt Const. Co.,* 136 Wn.2d 26, 30, 959 P.2d 1104 (1998). Where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is proper. *Id.* We

4

view the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Haley v. Amazon.com Servs., LLC*, 25 Wn. App. 2d 207, 224, 522 P.3d 80 (2022).

A.      *The Statute of Limitations for Oral Contracts under RCW 4.16.080(3) Applies*.

Lyons argues her action is based on a written contract under RCW 4.16.040(1) and subject to the six-year statute of limitations therein. We disagree.

"[A]n action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument" is subject to a three-year statute of limitations. RCW 4.16.080(3). "An action upon a contract in writing, or liability express or implied arising out of a written agreement" is subject to a six-year statute of limitations. RCW 4.16.040(1).

A written contract under RCW 4.16.040(1) must contain all the essential elements of a contract: the identity of the parties, the terms and conditions, the subject matter, and the consideration. *DePhillips*, 136 Wn.2d at 31. In *DePhillips*, our Supreme Court held that an employment handbook was not a written contract under RCW 4.16.040(1) because it did not "name or identify plaintiff, nor does it identify his job or job responsibilities or his work hours." *Id*.

"Ex parte writings are sufficient to bring a contract within the 6-year statute of limitations if the writing contains all of the elements of a contract." *Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 298, 890 P.2d 480 (1995). Several writings may establish the existence of a contract by way of incorporation by reference:

> if it appears from an examination of all the writings that the writing which is signed by the party to be charged was signed with the intention that it refer to the *unsigned writing*, and that the writings are so connected by *internal reference* in the signed memorandum to the unsigned one, that they may be said to constitute one paper relating to the contract.

5

*Cahn v. Foster & Marshall, Inc.*, 33 Wn. App. 838, 842, 658 P.2d 42 (1983) (quoting *Grant v. Auvil*, 39 Wn.2d 722, 724-25, 238 P.2d 393 (1951)).

For the incorporation by reference doctrine to apply, both parties must have knowledge of and assent to the incorporated terms. *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wn. App. 488, 494-95, 7 P.3d 861 (2000). Moreover, such "[i]ncorporation by reference must be clear and unequivocal." *Id*. If the signed document refers to another document only for a specific purpose, the incorporated document is part of the contract only for that purpose. *Id*. at 499.

A writing may also merely constitute ex parte memoranda related to an oral contract, as illustrated in *Bogle & Gates, PLLC v. Zapel*, when the law firm sent a letter to Zapel stating as follows:

> We wish to thank you for retaining Bogle & Gates and confirm our agreement to represent you and your brother in [a] . . . matter. Based upon our meeting, it is our understanding that Bogle & Gates will prepare an answer to [the] complaint, attempt to negotiate a settlement and, if necessary, defend you in the litigation.

121 Wn. App. 444, 446, 90 P.3d 703 (2004) (quoting *Bogle & Gates, PLLC v. Holly Mountain Res.*, 108 Wn. App. 557, 558, 32 P.3d 1002 (2001)). The letter also contained an hourly fee rate and referenced the firm's standard terms of representation; a preprinted booklet of the firm's standard terms was enclosed with the letter. *Id*. Division One held the letter was not a written contract under RCW 4.16.040(1), but instead, that "'[t]he writings are merely ex parte memoranda related to an oral contract, nothing more.'" *Id*. at 450.

Here, there is no signed written agreement evidencing a contract. Instead, Lyons argues that the following documents, collectively, establish the essential elements of a contract: the CBA, the job recruitment announcement, the Notification of Hiring Decision, and various emails

between Lyons and Walker.[2]  But we may consider only those documents—ex parte memoranda—collectively to the extent incorporation by reference connects those documents.

First, we address the various emails between Lyons and Walker.  The emails evidence that DSHS made a contingent oral offer of employment to Walker subject to a clear background check.  The emails also establish the time and location for the prospective first day of work.  The emails do not refer to the CBA, the Notification of Hiring Decision, nor the job recruitment announcement.  As such, the emails do not incorporate by reference those documents.  And the emails do not contain the terms and conditions of an employment contract, or the consideration elements of a contract; thus, the emails are insufficient to constitute a written contract.

Next, the Notification of Hiring Decision identified the parties and was signed by Walker, a DSHS employee.  The letter does not mention consideration, a promise to hire, the background check condition, work hours, or other terms and conditions of an employment contract.  The letter merely provides, "In accordance with the Washington Federation of State Employees (WFSE) Collective Bargaining Agreement, this letter is to thank you for your participation in the interview process . . . and to notify you that another candidate has been selected."  CP at 69.

On its own, this letter does not evidence that a contract was entered into.  It references participation in the interview process, not an underlying employment contract or a promise to

---

[2] Lyons relies most heavily on *Grand View Homes LLC v. Cascade Testing Lab., Inc.*, 146 Wn. App. 1044 (2008) (unpublished) to argue that these documents constitute a written contract. Lyons fails to note that this case is unpublished.  As that opinion is unpublished and filed before March 1, 2013, we decline to consider it under GR 14.1(a).

hire.  As such, this document does even less than the emails.  And Lyons was not an employee but an applicant; so, the CBA does not apply to her.  Its relevance is questionable.

Even assuming that this letter could form the basis of an employment contract and the passing reference to a CBA is sufficient to show the parties assented to incorporating the 2017-19 CBA into an employment contract, the reference was for a limited purpose.  The reference to the CBA was made for the limited purpose of notifying the interviewed candidate of the hiring decision.  And so, the CBA would be incorporated only for that limited purpose.  Accordingly, the letter and the limited CBA incorporation would still lack essential elements of the contract—terms and conditions of the employment as well as consideration.  Even considering the whole CBA, Lyons does not point us to a provision in the CBA stating that being hired as an APS investigator is contingent on a clear background check, which is what is at issue here.

Lyons also argues that the CBA incorporates by reference the job announcement because the CBA requires agencies to post job announcements when recruiting for a bargaining unit position.  Although the CBA generally required job announcements, it did not incorporate by reference the specific job announcement in this situation.

We hold that Lyons failed to establish that her claims were based on a written contract under RCW 4.16.040(1).  Therefore, the three-year statute of limitations for actions based on oral agreements under RCW 4.16.080(3) applies here.

B.      *Lyons's Claims Are Untimely under RCW 4.16.080(3).*

Lyons argues that even if RCW 4.16.080(3) applies, her claims were timely.  We disagree.

When the cause of action accrues, the statute of limitations begins to run. *Kinney v. Cook*, 150 Wn. App. 187, 192-93, 208 P.3d 1 (2009). Generally, the cause of action accrues "'when the party has the right to apply to a court for relief.'" *Id*. (quoting *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 575, 146 P.3d 423 (2006)). Contract actions accrue on breach of the contract. *Id*.

Here, DSHS informed Lyons of its hiring decision on November 23, 2016—the day DSHS allegedly broke its promise to hire Lyons. Therefore, the claims began to accrue on November 23, 2016, the date Lyons had the right to apply to a court for relief. Lyons filed the present action on June 25, 2021. There was roughly four years and, slightly more than, seven months between accrual and filing—clearly exceeding the three-year statute of limitations under RCW 4.16.080(3).

Lyons argues that her claims did not begin to accrue on November 23, 2016, but they began to accrue the last time DSHS broke its agreement to hire her—August 29, 2017—60 days after Lyons submitted notice of her tort action against DSHS. Lyons fails to cite any authority in her briefing to support the novel proposition that her action does not begin to accrue, regardless of how much time passes after an alleged tortious act, until 60 days have passed for DSHS to respond under RCW 4.92.110.[3] Thus, we assume that there is no authority to support this

---

[3] "All claims against the state, or against the state's officers, employees, or volunteers, acting in such capacity, for damages arising out of tortious conduct, must be presented to the office of risk management." RCW 4.92.100. RCW 4.92.110 provides that "[n]o action subject to the claim filing requirements of RCW 4.92.100 shall be commenced against the state . . . for damages arising out of tortious conduct until sixty calendar days have elapsed after the claim is presented to the office of risk management." RCW 4.92.110. RCW 4.92.110 also tolls the applicable period of limitations for sixty days.

proposition as counsel has failed to cite any, and we are not are required to search out supporting authority. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

And while Lyons's briefing does not cite the continuing violation doctrine,[4] we note that an improper "refusal to hire, standing alone, will not give rise to a continuing violation absent an allegation of an ongoing pattern or practice of discrimination." *Lewis v. Lockheed Shipbuilding & Const. Co.*, 36 Wn. App. 607, 614, 676 P.2d 545 (1984). The continuing violation doctrine has only been applied in Washington to discrimination and certain property cases. *Dunn v. City of Seattle*, 420 F. Supp. 3d 1148, 1162 (W.D. Wash. 2019). To that end, Division Three declined to extend the doctrine to negligence cases. *Cox*, 153 Wn. App. at 192.

Lyons alleges that each time DSHS did not approve her background check when she requested them to do so, it breached its agreement with Lyons. But, such conduct alone does not show a continuing violation absent an ongoing pattern or practice of discrimination. Moreover, Lyons's present claims are not in the discrimination or property context in which the continuing violation doctrine has been applied, and so, Lyons has failed to show that the doctrine is applicable to her present claims. Thus, we conclude that the present claims began to accrue on November 23, 2016.

Lastly, Lyons maintains the statute of limitations was tolled while her action was pending in the federal courts. Lyons filed the federal cause of action on October 26, 2018, and the district court dismissed the action on February 19, 2020. There was one year and less than four months

---

[4] The continuing violation doctrine is an equitable exception to the statute of limitations that some courts have applied regarding lawsuits based on chapter 49.60 RCW. *Antonius v. King County*, 153 Wn.2d 256, 262, 103 P.3d 729 (2004); *Cox v. Oasis Physical Therapy, PLLC*, 153 Wn. App. 176, 192, 222 P.3d 119 (2009). Notably, Lyons is not alleging claims under chapter 49.60 RCW in this case.

between those dates. So, even assuming, without deciding, that Lyons's causes of action should have been tolled for that period, Lyons's actions would still be untimely under RCW 4.16.080(3).[5] Because we hold that Lyons's causes of action were untimely, we decline to reach the claim preclusion issue.

CONCLUSION

We affirm the grant of summary judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Veljacic, A.C.J.

Price, J.

---

[5] In *Artis v. District of Columbia*, the United States Supreme Court held that when federal courts exercise jurisdiction over state law claims under the Supplemental Jurisdiction Statute, 28 U.S.C. § 1367, the relevant state statute of limitations is suspended during the pendency of a federal suit action and for 30 days post-dismissal. 583 U.S. 71, 83-85, 138 S. Ct. 594, 199 L. Ed. 2d 473 (2018). Even including the aforementioned federal tolling in addition to the 60 days under RCW 4.92.110, Lyons's causes of action would still be untimely under RCW 4.16.080(3).