**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 30, 2025

*Stephens, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 30, 2025

*Sarah Pendleton*
SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEFFERY THURMAN, | No. 102791-5 |
| Petitioner, | En Banc |
| v. | |
| COWLES COMPANY, | Filed: January 30, 2025 |
| Respondent. | |

WHITENER, J. — Washington State designed the Uniform Public Expression Protection Act (UPEPA), its anti-SLAPP (strategic lawsuit against public participation) law, to protect important public speech from frivolous litigation by providing a procedural scheme that disposes of such cases early and swiftly in the litigation life cycle. Ch. 4.105 RCW. Under the UPEPA, parties who are served with a pleading asserting a covered cause of action can file a "special motion for expedited relief." RCW 4.105.020. A "covered cause of action" is an action brought against a party based on the person's exercise of the constitutional right of freedom of speech or of the press on a matter of public concern. RCW 4.105.010(2)(c). If the UPEPA applies, then the opposing party has 60 days after being served with the

covered action to file a "special motion for expedited relief." RCW 4.105.020(1). In this case, we are asked to determine whether the UPEPA applies to claims filed before the UPEPA's effective date of July 25, 2021 and then subsequently amended after the effective date. We hold that Thurman's amended defamation claim relates back to the defamation claim he asserted in his original complaint and, therefore, is not subject to the UPEPA. We reverse the Court of Appeals and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

Former Spokane police officer Jeffery Thurman was the subject of a June 13, 2019 article published in the *Spokesman-Review* newspaper. Clerk's Papers (CP) at 514-17. The article headline stated that "Spokane County sheriff's sergeant fired for racial slur, sexual harassment, talk of killing black people." *Id*. The *Spokesman-Review* is owned by Cowles Co. CP at 300-01. On June 14, 2021, about two years after the publication, Thurman filed a civil action against Cowles Co., alleging a defamation cause of action. CP at 4-18. Shortly thereafter, on July 25, 2021, the UPEPA took effect. Ch. 4.105 RCW. On December 3, 2021, Thurman filed his first amended complaint. CP at 394-415. Thurman's amended complaint (hereinafter referred to as "December 3, 2021 amended complaint") included newly identified course of conduct information about Cowles, leading to the alleged defamatory

publications raised in his June 14, 2021 complaint, and it also included for the first time a claim under the Consumer Protection Act (CPA), ch. 19.86 RCW. *Id.*

On December 29, 2021, Cowles e-mailed Thurman's counsel and advised them of its intent to seek a "special motion for expedited relief" pursuant to the UPEPA. CP at 570-71. On January 21, 2022, Cowles filed its special motion for expedited relief under the UPEPA. CP at 484-500.

The trial court partially granted Cowles' special motion for expedited relief. CP at 922-27. It granted Cowles' motion to dismiss Thurman's CPA claim because it found that claim was not based on acts that occurred in trade or commerce and that were barred by the First Amendment to the United States Constitution. CP at 923-25. The court denied Cowles' motion to dismiss the defamation claim and found that it was not subject to the UPEPA. CP at 924. The court reasoned that "[w]hile the Plaintiff has added additional information to and allegations of defamation to his defamation claim, the Court finds that these are all part of a single defamation claim which was first asserted in his original Complaint." *Id.* The trial court also rejected Thurman's constitutional challenge to the UPEPA, finding that the application of the CR 12 and 56 standards were constitutional pursuant to *Davis v. Cox*, 183 Wn.2d 269, 351 P.3d 862 (2015), *abrogated on other grounds by Maytown Sand & Gravel, LLC v. Thurston County*, 191 Wn.2d 392, 440 n. 15, 423 P.3d 223 (2018). *Id.* Cowles appealed the portion of the decision denying expedited relief of Thurman's

defamation claim, and Thurman cross appealed for the portion of the decision dismissing his CPA claim. CP at 928, 937.[1]

The Court of Appeals affirmed in part and reversed in part. The majority held that the UPEPA applied to both Thurman's defamation claim and his CPA claim. *Thurman v. Cowles Co.*, 29 Wn. App. 2d 230, 541 P.3d 403 (2024). The majority reasoned that Thurman's defamation claim in the June 14, 2021 complaint was "asserted" on a continuing basis on the UPEPA's effective date. *Id.* at 240. The dissent disagreed, stating the defamation claim in the June 14, 2021 complaint was not "asserted" on or after July 25, 2021, the UPEPA's effective date, and therefore the UPEPA did not apply to Thurman's December 3, 2021 defamation claim. *Id*. at 250 (Staab, J., dissenting).

The Court of Appeals declined to reach the question of whether the UPEPA's discovery stay was unconstitutional because Thurman did not actually ask the trial court to permit discovery. *Id*. at 244-45. The Court of Appeals also upheld the constitutionality of the UPEPA; however, it did opine that the presumption of a discovery stay violates the broad discovery rights under CR 26. *Id*. at 245-46.

---

[1] RCW 4.105.080 grants a moving party who is denied expedited relief, in whole or in part, the right of direct appeal "as a matter of right."

The Court of Appeals affirmed the dismissal of Thurman's CPA claim and directed the trial court to award fees and expenses to Cowles for the defense and appeal of the CPA claim. *Id*. at 249. The Court also remanded for reconsideration of the defamation claim under the UPEPA's special motion procedure and directed the trial court to award fees and expenses to Cowles if it prevails on the defamation claim. *Id*. We granted the petition for review.

ISSUES

(1)  Whether Thurman's defamation claim against Cowles is subject to the UPEPA and its special motion for expedited relief.

(2)  Whether the UPEPA intended to include claims that were pleaded prior to the transitional provision's effective date of July 25, 2021 and later amended after the effective date is a matter of statutory interpretation of RCW 4.105.903.

STANDARD OF REVIEW

Statutory interpretation is a question of law that this court reviews de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). The goal of statutory interpretation is to discern and implement the legislature's intent. *Id*. In interpreting a statute, this court looks first to its plain language. *Id*. We determine that intent by examining the plain language of the statutory provision in question; but we also

consider the meaning of that language in the context of the whole statute and related statutes. *State v. Thomason*, 199 Wn.2d 780, 787, 512 P.3d 882 (2022). If the plain language of the statute is unambiguous, then this court's inquiry is at an end. *Armendariz*, 160 Wn.2d at 110. The statute is to be enforced in accordance with its plain meaning. *Id*. In interpreting statutory language, "[this court] presume[s] the legislature does not intend absurd results." *State v. Ervin*, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010).

ANALYSIS

BACKGROUND ON THE UNIFORM PUBLIC EXPRESSION ACT

The UPEPA is a type of anti-SLAPP law, designed to combat the problem of strategic lawsuits against public participation. A SLAPP may come in any form; however, common formulations include defamation, invasion of privacy, and nuisance claims. George W. Pring, *SLAPPs: Strategic Lawsuits against Public Participation*, 7 PACE ENV'T L. REV. 3, 4, 9 (1989). These lawsuits are brought with the intent to deter the defendant from public participation by subjecting them to costly and extensive litigation. *Id*. at 3-6; *see also* Michael Eric Johnston, *A Better SLAPP Trap: Washington State's Enhanced Statutory Protection for Targets of "Strategic Lawsuits against Public Participation"*, 38 GONZ. L. REV. 263, 275, 279-80 (2002) (anti-SLAPP law procedures are designed to allow a defendant to bring

the potentially frivolous lawsuit to a speedy resolution through a motion for expedited relief).

Washington's 2010 anti-SLAPP law (former RCW 4.24.525 *repealed by* LAWS OF 2021, ch. 259, § 15), was declared unconstitutional by this court in 2015. *Davis*, 183 Wn.2d 269. *Davis* held that RCW 4.24.525(4)(b) unconstitutionally deprived a claimant's right to trial by jury. *Id*. at 295-96. The statute at issue in *Davis* required the trial judge to rule on motions using a "clear and convincing" evidence standard,[2] thereby invading the jury's province of resolving disputed facts and resulting in the dismissal of nonfrivolous claims without a trial. *Id*. at 289, 293-94. The entire statute was invalidated because the subsection was the law's impetus and could not be severed from its remaining provisions. *Id*. at 294-95.

On July 25, 2021, Washington State was the first in the nation to enact the UPEPA. The UPEPA has since been enacted in Hawaii, Kentucky, Maine, Minnesota, New Jersey, Oregon (substantially similar), Pennsylvania, and Utah. The purpose of the UPEPA is to safeguard first amendment rights and to deter and prevent nonmeritorious lawsuits targeted at discouraging individuals from speaking publicly or petitioning the government. RCW 4.105.010.

---

[2] *Davis* held that "'[w]hen there is no genuine issue of material fact, … summary judgment proceedings do not infringe upon a litigant's constitutional right to a jury trial.'" *Id*. at 289 (alterations in original) (quoting *La Mon v. Butler*, 112 Wn.2d 193, 200 n. 5, 770 P.2d 1027 (1989)). In ruling on the motion for expedited relief, the UPEPA adopts a summary judgment motion standard.

The UPEPA envisions a procedure that allows for the speedy and early resolution of SLAPP lawsuits. RCW 4.105.010. The specific timeline of events under a UPEPA challenge are as follows: First, it applies only to a cause of action against a party based on the person's exercise of the constitutional right of freedom of speech or of the press on a matter of public concern. RCW 4.105.010 (2)(c). If the UPEPA applies, the opposing party, after being served with the complaint, cross-claim, or other pleading asserting a claim that is subject to the act, has 60 days to file a "special motion for expedited relief" to dismiss the cause of action. RCW 4.105.020(2). Upon giving notice of intent to file a motion under RCW 4.105.020(1), all proceedings between the moving and responding parties, including discovery and pending motions, are stayed. RCW 4.105.030. In ruling on a motion under RCW 4.105.020, the court shall consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment under CR 56. RCW 4.105.050. The responding party can survive the motion by either (1) establishing a prima facie case as to each element of their cause of action or (2) establishing that there is a genuine issue as to any material fact. RCW 4.105.060. A moving party may appeal as a matter of right from an order denying a motion under RCW 4.105.020. On motion, there is a mandatory fee shifting provision for the movant. The respondent can also recover fees, if the court

finds that the motion was not substantially justified or was brought solely to delay the proceeding. RCW 4.105.090.

IS THURMAN'S DEFAMATION CLAIM SUBJECT TO THE UPEPA?

In resolving this issue, three dates are significant. On June 14, 2021, Thurman filed a civil action against Cowles, alleging a defamation cause of action. CP at 4-17. On July 25, 2021, Washington State's UPEPA was passed. On December 3, 2021, Thurman filed an amended complaint where he amended his defamation claim against Cowles. CP at 394-415.

The issue of whether Thurman's defamation claim against Cowles is subject to the UPEPA turns on the statutory construction of the UPEPA's transitional provision. The provision reads:

> This chapter applies to a civil action filed or cause of action asserted in
> a civil action on or after July 25, 2021.

RCW 4.105.903.

Thurman's June 14, 2021 complaint, which included a defamation cause of action, was filed about a month prior to when the UPEPA took effect on July 25, 2021. Thurman's December 3, 2021 amended complaint was filed after the UPEPA took effect. This complaint amended Thurman's defamation claim against Cowles to include new course of conduct allegations. CP at 394-415. On December 29, 2021,

Cowles invoked the UPEPA's "special motion for expedited relief" and provided Thurman with the statutorily required 14-day notice. CP at 570-71. On January 21, 2022, Cowles filed its special motion for expedited relief, seeking to dismiss the suit under the UPEPA. CP at 484-500.

The trial court found that the UPEPA did not apply to Thurman's December 3, 2021 amended complaint because that claim was part of the single defamation claim he asserted in his June 14, 2021 complaint. CP at 924. However, the Court of Appeals majority held that the defamation claim asserted in Thurman's June 14, 2021 complaint was reasserted in his December 3, 2021 amended complaint, which made it subject to the UPEPA. *Thurman*, 29 Wn. App. 2d at 240-41. The majority reasoned that absent clear legislative intent to the contrary, the word "or" in a statute is disjunctive. *Id.* (citing *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 339, 334 P.3d 14 (2014)). Construing "or" disjunctively, RCW 4.105.903 makes the chapter applicable to (1) a "civil action filed . . . on or after July 25, 2021" or (2) a "cause of action asserted in a civil action on or after July 25, 2021." The majority stated that "with respect to the first disjunctive phrase, Mr. Thurman's civil action was not filed on or after July 25, 2021. But with respect to the second disjunctive phrase, Mr. Thurman's original and amended defamation causes of action were asserted on or after July 25, 2021. More plainly, although originally filed before July 25, the

original causes of action continued to be asserted until amended, so they were asserted on or after July 25, 2021." *Thurman*, 29 Wn. App. 2d at 240.

The dissent interpreted the word "asserted" to be a static event that refers to a singular date, the date Thurman's defamation claim was first asserted in the pleadings. *Id*. at 250-51 (Staab, J., dissenting). June 14, 2021, the date of his complaint is the date he first asserted his defamation cause of action. *Id*. at 252-53. The dissent reasoned that such an interpretation comports with (1) a plain reading of the word "asserted" and (2) the CR 15(c) "relate back rule," which states that amended pleadings that assert claims that arise out of the same transaction, occurrence, or conduct set forth in the original pleading, relate back to the date of the original pleading. *Id*.

We adopt the dissent's reasoned interpretation of the statute.

A.      Conflicting interpretations of the word "asserted"

Under the majority's plain reading of Washington's UPEPA, in particular its reading of the second disjunctive phrase of RCW 4.105.903, the UPEPA applies when there is a "cause of action asserted" on or after July 25, 2021, regardless of whether that cause of action was first asserted in a pleading prior to the effective date of the UPEPA. *Id*. at 240. The majority reasons that the defamation claim in Thurman's June 14, 2021 complaint was also "asserted" in the December 3, 2021

11

amended complaint. Therefore, Thurman's claim was continually asserted from the date of the June 14, 2021 complaint until it was amended.

The majority's broad interpretation of the word "asserted" to suggest that causes of action continue to be asserted even after they are originally filed is problematic. First, if causes of actions are continuously "asserted," then Cowles could have brought a UPEPA motion absent Thurman's filing of an amended complaint. By the majority's logic, Thurman did not have to file his December 3, 2021 amended complaint in order to "assert" his defamation claim because his defamation claim was continuously being asserted. However, as the dissent points out "the statute does not read that UPEPA applies to causes of action *pending* on or after July 25, 2021. Instead, the [UPEPA] uses the more specific verb 'asserted.'" *Id*. at 252 (Staab, J., dissenting).

Another issue that arises under the majority's interpretation of the word "asserted" is that if causes of actions are continuously "asserted" throughout the life of a case, then it would make the 60-day deadline imposed under the UPEPA meaningless. This is because the word "assert" is also used in the UPEPA to indicate the triggering event that starts the 60-day deadline for the opposing party to file a special motion for expedited relief when a cause of action is asserted. RCW 4.105.020(2). While the legislature may have intended to grant defendants this broad right, the majority's interpretation would contradict the primary goal of anti-SLAPP

laws, to dispose of frivolous lawsuits early in the litigation life cycle. Pring, *supra*, at 17; *see also* NAT'L CONF. OF COMM'RS OF UNIFORM STATE L., UNIFORM PUBLIC EXPRESSION PROTECTION ACT 2 (stating that a primary goal of anti-SLAPP statutes is to "dismiss or strike [SLAPP lawsuits] early in the litigation process"), https://medialaw.org/wp-content/uploads/2022/05/UPEPA-with-comments.pdf [https://perma.cc/C2LA-WYHF].

The majority claims that the dissent reads the statute by transposing the word "filed," which is present in the first disjunctive phrase, to the second disjunctive phrase. *Thurman*, 29 Wn. App. 2d at 240. However, the difference in interpretation lies not in the insertion of the word "filed" but rather in the majority's and dissent's diverging interpretation of the word "asserted." According to the dissent, Thurman's defamation claim was asserted once, in a singular static event, the date he filed his June 14, 2021 complaint. *Id*. at 250-51 (Staab, J., dissenting). The second disjunctive phrase does not apply to Thurman's defamation claim because he had asserted it in his June 14, 2021 complaint, before July 25, 2021, and amended those assertions in his December 3, 2021 amended complaint. *Id*.

The UPEPA was enacted to be construed broadly to protect the exercise of freedom of speech and of the press. RCW 4.105.901. Thurman's narrow interpretation of the UPEPA's transitional provision offers fewer protections to those fighting SLAPP lawsuits. While a court should consider the legislature's call for the

13

statute to be broadly construed, there is also a strong presumption that statutes apply only prospectively unless the legislature explicitly states otherwise. *1000 Va. Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 146 P.3d 423 (2006) (recognizing that statutes are presumed to run prospectively). A statute may apply retroactively if there is legislative intent or if the statute is curative or remedial. *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 324, 12 P.3d 144 (2000). There is an absence of legislative intent in the language of the UPEPA that it should apply retroactively. The inclusion of an effective date in the act's transitional provision suggests that the legislature did not intend for the act to capture claims pleaded prior to its effective date.[3]

The UPEPA cannot apply to Thurman's amended defamation claim because the word "asserted" in the UPEPA transitional provision refers to a singular rather than a continuous event.

---

[3] Thurman's petition for review and supplemental brief also contend that the Court of Appeals' decision results in the removal of his "vested rights" by allowing for the retroactive application of the UPEPA to his defamation claim—a "vested right." Thurman argues that statutes that affect vested rights are to be construed prospectively only. Pet. for Discr. Rev. at 19 (quoting *1000 Va. Ltd. P'ship*, 158 Wn.2d at 587). "An 'accrued cause of action is a vested right when it springs from contract or from the principles of the common law.'" *Id*. (internal quotation marks omitted) (quoting *1000 Va. Ltd. P'ship*, 158 Wn.2d at 587) *Cowles* did not address this argument. As this court finds that the UPEPA does not apply on statutory grounds, we do not reach the constitutional question of whether Thurman has or does not have a "vested right" in his defamation claim.

B.      Under CR 15(c), Thurman's amended defamation claim relates back to his June 14, 2021 complaint

Thurman contends that the Court of Appeals majority's statutory construction of the UPEPA's transitional provision conflicts with CR 15. Suppl. Br. of Pet'r Jeffrey Thurman at 24-26. Under CR 15(c), Thurman contends that his amended defamation claim contained in his December 3, 2021 amended complaint "relat[es] back" to the defamation claim filed in his June 14, 2021 complaint. *Id.* Washington's CR 15 governs amended and supplemental pleadings. "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." CR 15(c).

Thurman's December 3, 2021 amended complaint included additional factual allegations related to the defamation claim he filed in his June 14, 2021 complaint. CP at 394-415. However, Cowles has not addressed why CR 15(c)'s relate back rule is inapplicable to Thurman's defamation claim, as to do so would require Cowles to concede that the two claims arose from distinct transactions and occurrences. This argument would be incongruous with Cowles' primary contention that Thurman's original and amended defamation claim form a singular defamation claim subject to the UPEPA.

CR 15, the relate back rule, largely focuses on its purpose in preserving claimant's time-barred claims. The relate back rule allows claimants to preserve the statute of limitations for their claims by allowing for additional potentially untimely claims asserted in amended pleadings to relate back to the date of the original related claim. *DeSantis v. Angelo Merlino & Sons, Inc.*, 71 Wn. 2d 222, 427 P.2d 728 (1967) (holding that when amended claims or defenses arise out of the same events set forth in the original pleading, the amended pleadings relate back to the date of the original pleading). The requirement that the amended claim arises out of the same transaction and occurrence as the original claim is central. An amendment stating a time-barred new cause of action is not allowed where the amendment involves an unrelated event occurring at a different time. *Herron v. KING Broad. Co.*, 109 Wn.2d 514, 746 P.2d 295 (1987); *Campbell v. King County*, 38 Wn. App. 474, 685 P.2d 659 (1984) (holding that relation back of amendments in a complaint is proper even when the case presents a new cause of action or legal theory as long as the cause of action arose out of the same conduct, transaction, or occurrence and the defendant receives adequate notice of the amendment).

In addition, CR 15(c) outlines some important policy interests the drafters instructed courts to consider in granting leave to amend. These considerations are, however, more specific to motions for leave to amend to change a party against whom a claim asserted relates back. CR 15(c). The rule states that the party against

whom the claim is being brought either should have been aware of the possibility of suit or should have received notice of the action and not be prejudiced in maintaining their own defense on the merits. *Id*. Even if these considerations were necessary for the court to weigh in granting leave to amend, there are no issues of notice or prejudice. Here, Cowles is already on notice of the defamation claims asserted against it and it is not prejudiced in defending against the amended claim.

The relate back rule states that amended claims that arise out of the same transaction or occurrence as those pleaded in the original pleading relate back to the date of the original pleading. *Id*. Thurman's December 3, 2021 amended complaint arises from the same transactions, occurrences, and conduct set forth in his June 14, 2021 complaint. Thurman's amended defamation claim includes course of conduct information such as additional factual allegations that support the elements of the *same* alleged defamatory statements asserted in his June 14, 2021 complaint. Thurman does not introduce new defamatory statements in his December 3, 2021 amended complaint. For example, in the June 14, 2021 complaint, Thurman alleges defamatory statements in articles published on June 13, 2019 at 3:14 p.m., June 13, 2019 at 10:51 p.m., June 14, 2019, June 18, 2019, July 2, 2019, June 21, 2020, and August 5, 2020. CP at 4-17. The December 3, 2021 amended complaint simply adds factual details to the elements underlying the aforementioned alleged defamation publications. CP at 394-414.

The trial court was correct in finding that Thurman's amended defamation claim was part of the single defamation claim he first asserted in his June 14, 2021 complaint. CP at 924. The reasoning of the Court of Appeals dissent is correct. Thurman's amended defamation claim relates back to the date of his original complaint. *Thurman*, 29 Wn. App. 2d at 252 (Staab, J., dissenting).

CONCLUSION

Chapter 4.105 RCW does not apply to claims filed before its effective date, and, therefore, amended claims relating back to those claims are not subject to the UPEPA. Thurman's amended defamation claim was part of the single defamation claim he asserted in his June 14, 2021 complaint and therefore not subject to the UPEPA. We decide this case on statutory grounds. Therefore, we decline to reach Thurman's constitutional arguments. *State v. Houston-Sconiers*, 188 Wn.2d 1, 18 n.3, 391 P.3d 409 (2017). Accordingly, we reverse the Court of Appeals and remand for further proceedings.

Whitener, J.

WE CONCUR.

Stephens, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

González, J.

Lewis, J.P.T.