IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86046-1-I |
| Respondent, | DIVISION ONE |
| v. | |
| SHAQUILLE CAPONE JONES, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, J. — In 2016, a jury convicted Shaquille Jones of three counts of assault, each with a firearm enhancement; one count of unlawful possession of a firearm; one count of possession of a stolen firearm; and one count of witness tampering. Upon resentencing under *State v. Blake,* 197 Wn.2d 170, 481 P.3d 521 (2021), in 2023, the court granted Jones's request for an exceptional sentence below the standard range. The court declined to run his firearm enhancements concurrently. Jones appeals, asserting that the trial court should have discretion to impose concurrent firearm enhancements and that the Supreme Court should overrule *State v. Brown,* 139 Wn. 2d 20, 983 P.2d 608 (1999) *overruled on other grounds*, *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), to that effect.[1]

In a provisional supplemental brief, Jones claims that mandatory stacking weapon enhancements are cruel as applied to 21-year-old offenders, that he

---

[1] The Washington State Supreme Court's recent opinion in *State v. Kelly*, 4 Wn.3d 170, 561 P.3d 246 (2024), did not overrule *Brown*.

may raise this claim for the first time on appeal under RAP 2.5(a)(3), that resentencing is required based on *Houston-Sconiers* protections, that resentencing is required because the trial court found the sentence disproportionate to his culpability, and that the sentence is cruel under *Monschke*. We affirm and decline to consider Jones' supplemental briefing.

FACTS

Background

In 2016, a jury convicted Shaquille Jones of three counts of assault in the first degree with firearm enhancements, one count of possession of a stolen firearm, one count of unlawful possession of a firearm, and one count of witness tampering. Jones was 21 years old when he committed the offenses and had no prior felony convictions. Based on the three consecutive firearm enhancements and the multiple offense policy under RCW 9.94A.589, the court sentenced Jones within the standard sentencing range of 477 to 573 months.

Resentencing Request

In 2021, the Washington State Supreme Court decided *Blake*, which overturned Washington's drug possession statute. Following *Blake*, Jones brought a personal restraint petition requesting resentencing. *In re Pers. Restraint of Jones*, No. 83076-7-I (Wash. Ct. App. Apr. 18, 2022) (unpublished) https://www.courts.wa.gov/opinions/pdf/830767.pdf. Noting that Jones's unlawful possession of a firearm charge rested on a conviction now constitutionally invalid under *Blake*, this court determined that Jones was entitled to resentencing. *Jones*, No. 83076-7-I, slip op. at 1-2.

2

Before the resentencing hearing, Jones submitted significant evidence to support the mitigation of his sentence. This evidence included his own writings to the resentencing judge, letters of support from his family and community members, and proof of his completion of a variety of educational and self-improvement focused programs while incarcerated.

Jones also submitted an expert evaluation prepared by Dr. Marnee Milner, documenting the typical immaturity and cognitive brain development of a 21-year-old man, as well as the specific trauma Jones suffered as a young person. Dr. Milner concluded that "aside from the normative adolescent and brain development, [Jones] experienced multiple adverse childhood events that contributed to cognitive, emotional, social psychological, and behavioral dysfunction leading up to his behavior and psychological state on or before the time of the criminal incident." This resulted in impulsivity issues, hyperactivity, and inattention, all of which interfered with Jones's ability to analyze the risks and consequences of his behavior.

Resentencing Hearing

At the 2023 resentencing hearing, Jones requested an exceptional sentence below the standard range based on his youthfulness and particular neurodivergent circumstances. Believing the initial sentence to be "clearly excessive," Jones requested a range of 171 to 207 months. Concerning the firearm enhancements specifically, Jones asked that the trial court impose an exceptional downward sentence of 111 months on the first degree assault convictions, concurrent with the other convictions, and a consecutive 60-month

firearm enhancement, with each enhancement running concurrently. The State primarily agreed with Jones's recommendation, but asked the court to resentence Jones to the higher end of the 171 to 207 range.

Commending Jones for his progress while incarcerated, his thoughtful reflection, and his community support, the trial court imposed a 240-month sentence in line with Sentencing Reform Act requirements. The court imposed 60 months of confinement on each assault count to run concurrently, with an additional 60-month firearm enhancement for each assault count to run consecutively. In doing so, the court imposed the lowest possible sentence for the assault in the first degree conviction and repeatedly stated it did not have the authority or discretion to run the firearm enhancements concurrently for an offender over 18 years old. The court did note, however, that "had [it] determined that it did have the discretion, the court would have imposed a sentence within the range as requested."

Appeal

Jones appealed, asserting that the sentencing court did have the authority to order the mandatory firearm enhancements to run concurrently as part of an exceptionally mitigated sentence. This court stayed the appeal pending the Supreme Court's decision in *State v. Kelly*, 4 Wn.3d 170, 561 P.3d 246 (2024), heard in February 2024.

Jones then filed a supplemental brief, including a supplemental assignment of error. The court commissioner provisionally granted the motion to

4

allow the supplemental brief, referring it to the panel to decide whether to consider the briefing.

ANALYSIS

Concurrent Firearm Enhancements

Jones asserts that the trial court erred in failing to recognize its discretion to run firearm enhancements concurrently as part of an exceptional sentence. Because RCW 9.94A.533(a)(3) precludes a trial court from exercising such discretion, we disagree.

We review questions of statutory interpretation de novo. *Kelly*, 4 Wn.3d at 191. The goal of statutory interpretation is to ascertain and implement the legislature's intent. *Thurman v. Cowles Company*, 4 Wn.3d 291, 296, 562 P.3d 777 (2025). This includes examining the plain language of the specific statutory provision, as well as the meaning of that language in the context of the whole statute and related statutes. *Thurman*, 4 Wn.3d at 296.

Under RCW 9.94A.535, a court may impose an exceptional sentence below the standard range if it finds substantial and compelling reasons justifying an exceptional sentence. RCW 9.94A.533(3)(e) clarifies, however, that all firearm enhancement sentences are mandatory and shall run consecutively to all other sentencing provisions.

In *Brown*, the Washington Supreme Court interpreted RCW 9.94A.533(a)(3) to clearly indicate that the "judicial discretion to impose an exceptional sentence does not extend to a deadly weapon enhancement." 139 Wn.2d at 28. Partially overruling *Brown*, the Supreme Court then extended

judicial discretion regarding weapon enhancements only for juveniles within the adult justice system. *Houston-Sconiers*, 188 Wn.2d 1 at 9. The Supreme Court affirmed both interpretations in *Kelly*, determining that a sentencing court exceeds its authority in ordering firearm enhancements to run concurrently for an adult offender. 4 Wn.3d at 195.

Here, the trial court concluded that it did not have the authority to order Jones's firearm enhancement sentences to run concurrently. Because RCW 9.94A.533(a)(3) expressly requires firearm enhancements to run consecutively, precluding any trial court discretion, the court did not err in imposing the 240-month sentence.

### Supplemental Briefing

Following the Supreme Court's holding in *Kelly*, Jones filed a supplemental appeal raising four issues not asserted in the initial appeal. Because we generally do not consider arguments raised for the first time in supplemental briefing and caselaw specifically precludes Jones's requested analysis, we decline to address Jones's additional claims.

Generally, this court will not consider arguments raised for the first time in supplemental briefing. *State v. Delbosque*, 6 Wn. App. 2d 407, 413 n.3, 430 P.3d 1153 (2018), *reversed in part on different grounds*, 195 Wn.2d 106 (2020). This includes constitutional challenges. *State v. Krajeski*, 104 Wn. App. 377, 387, 16 P.3d 69 (2001).

Jones contends that this court should address the added claims because newly appointed counsel determined that constitutional issues arise from the

same facts and RAP 2.5(a)(3) allows consideration of new constitutional claims. But *Krajeski* specifically precludes the analysis Jones requests. 104 Wn. App. at 387.

The court in *Krajeski* determined that, "[a]s a general rule, a court is precluded from considering a *Gunwall*[2] analysis when raised for the first time in a supplemental brief. A more liberal rule would encourage appellants to untimely raise issues, leading to unbalanced and incomplete development of issues." 104 Wn. App. at 387 (citation omitted). Jones specifically requests a *Gunwall* analysis, addressing cruel punishments as applied to youthful offenders, for the first time in a provisional supplemental brief. Accordingly, we decline to address Jones's supplemental appeal.

We affirm.

WE CONCUR:

---

2  *State v. Gunwall*, 106 Wash.2d 54, 720 P.2d 808 (1986).