**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| NATASHA BAMBERGER, an individual, | No. 88573-1-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| LAND TITLE AND ESCROW COMPANY, a Washington Corporation, | |
| Respondent. | |

MANN, J. — Natasha Bamberger appeals the superior court's order dismissing her breach of contract claim on summary judgment.[1]  She makes several arguments, including that there are genuine issues of material fact about whether Land Title and Escrow Company (LTEC) performed its contractual duties.  We affirm.

I

In 2012, Natasha Bamberger and her sister, Christina Bamberger, inherited their stepmother's home in Coupeville.[2]  But due to concerns about Natasha's financial

---

[1] The superior court also dismissed Bamberger's Consumer Protection Act (CPA), ch. 19.86 RCW, and breach of fiduciary duty claims.  Bamberger does not assign error concerning either claim and we do not review them.  RAP 10.3(a)(4), (g).

[2] We review all the facts in the light most favorable to Natasha as the nonmoving party.  We note, however, that while Natasha claims she inherited the Coupeville home along with her sister, Christina, their stepmother's will and probate agreement identify Christina as the only heir.  While a disputed fact, it is not material to the issues before us.

condition, particularly her student loans, only Christina's name was included in the property title.[3]

In early 2018, Christina agreed to sell her interest in the home to Natasha and her then-boyfriend Libardo Latorre. Attorney Jacob Cohen, who represented all three parties, put the transaction together. Cohen contacted LTEC to handle the closing.

The original purchase and sale agreement (PSA) listed both Natasha and Latorre as buyers. But on June 20, 2018, LTEC's escrow manager e-mailed Cohen explaining that the lender was concerned about including Natasha as purchaser because of her student loans and suggesting that she could be added to the property title after closing via quitclaim deed. Natasha and Latorre agreed in writing to the proposed strategy.

On June 21, 2018, Cohen responded to LTEC's e-mail instructing them to prepare a quitclaim deed from Latorre to Natasha and Latorre as joint tenants with right of survivorship.

On June 22, 2018, LTEC's escrow manager e-mailed Cohen to clarify that the recording and excise fees for the requested quitclaim deed could not be included in the closing statement for the PSA, and thus Latorre would have to bring an additional $111 to the closing appointment to cover these fees.

On June 26, 2018, Cohen e-mailed LTEC's escrow manager a signed addendum to the PSA initialed and signed by Natasha, Christina, and Latorre. Cohen also wrote

> By copy of this email to Natasha Bamberger and Libardo Latorre, I am informing them that they should both go to the closing appointment together so that they can sign both deeds, and Libardo needs to bring with him the cash or check to pay the $111 that you mention in your email of June 22.

---

[3] We refer to the sisters by their first names to avoid confusion only. No disrespect is intended.

Based on the addendum to the PSA, LTEC prepared escrow instructions listing Christina as seller and only Latorre as purchaser. Christina and Latorre signed and the transaction was closed on July 16, 2018. There is no record that Natasha appeared at the closing appointment or that Natasha or Latorre tendered payment for the recording and excise fees for the quitclaim deed.

According to Natasha, after Latorre took title to the home as sole owner, he ignored the written agreement between the two and refused to sign a quitclaim deed to include her in the property title. After a lengthy legal process, Latorre transferred title to Natasha via quitclaim deed in 2022.

On March 30, 2023, Natasha demanded that LTEC pay $99,850 in costs and $783 in attorney fees, which she claimed were incurred because LTEC failed to have Latorre sign the quitclaim deed and record it after the July 16, 2018 closing.

On March 11, 2024, Natasha sued LTEC in Snohomish County Superior Court for breach of contract, breach of fiduciary duty, and a violation of the CPA.

On June 20, 2025, the trial court granted LTEC's motion for summary judgment and dismissal. The court awarded LTEC its attorney fees and costs. After Natasha unsuccessfully sought reconsideration, the trial court entered a supplemental judgment for attorney fees.

Natasha appeals.

II

Natasha argues that the superior court erred by dismissing her breach of contract claim on summary judgment. Natasha asserts that LTEC's duties under the agreement

-3-

included preparing the quitclaim deed after closing, ensuring Latorre signed it, and recording it—none of which LTEC did. In opposition, LTEC argues that Natasha's breach of contract claim was properly dismissed for several independent reasons, including that (1) Natasha did not perform her own threshold duty under the agreement and (2) imputing duties outside of the parties' express written communications negates the "mutual assent" component of contract formation in Washington. We agree with LTEC.

A

We review summary judgment orders de novo and review all facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one that affects the outcome of the litigation. Elcon, 174 Wn.2d at 164.

"The burden of proving a contract, whether express or implied, is on the party asserting it, and [they] must prove each essential fact, including the existence of a mutual intention." Cahn v. Foster & Marshall, Inc., 33 Wn. App. 838, 840, 658 P.2d 42 (1983). The parties must have a "meeting of minds, in the same sense, on all the essential terms of the promise." Peoples Mortg. Co. v. Vista View Builders, 6 Wn. App. 744, 747, 496 P.2d 354 (1972). "The meeting of minds must be based upon an objective manifestation of mutual intent on the essential terms of the promise[;]" it "cannot be based on unexpressed subjective intent." Peoples Mortg. Co., 6 Wn. App. at 747. "If a contract requires performance by both parties, the party claiming

-4-

nonperformance of the other must establish as a matter of fact the party's own performance." <u>Willener v. Sweeting</u>, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

B

The e-mail exchanges between Cohen and LTEC between June 20 and June 26, 2018, evidence that the parties agreed to the following terms: (1) LTEC would prepare quitclaim deed for Latorre to transfer title to Natasha and Latorre; (2) Latorre would bring $111 in cash or check separately to record the quitclaim deed; and (3) Natasha and Latorre would both appear at the closing appointment to sign the deeds.

To the extent the e-mail exchanges formed a valid agreement, it appears that neither party met their mutually agreed terms. While the closing occurred and Christine transferred the property to Latorre, there is no evidence in the record that LTEC prepared a quitclaim deed from Latorre to Natasha and Latorre, that Natasha attended the closing appointment, or that Latorre brought payment of $111 to cover the recording and excise fees for the quitclaim deed.

In her reply brief, Natasha asserts that the lack of payment of the recording and excise fees is but a red herring, instead suggesting that LTEC could have simply reminded everyone that the $111 payment was needed before recording the quitclaim deed. According to Natasha, because LTEC failed to prepare the quitclaim deed and failed to obtain Latorre's signature, the $111 payment was not needed, and there was no breach on her part. We disagree.

Natasha fails to prove a contractual agreement requiring LTEC to obtain Latorre's signature where he failed to provide the required $111 recording and excise fee payment. Said differently, insofar as Natasha contends that LTEC agreed to

prepare the quitclaim deed, ensure Latorre's signature, and record the same without receiving payment for the recording and excise fees, her argument negates the "mutual assent" component necessary for a binding agreement. Without it, Washington's "objective manifestation" test for contracts fails, and without a contract there can be no claim for breach. See Peoples Mortg. Co., 6 Wn. App. at 747.

For those reasons, looking at the evidence in the light most favorable to Natasha, we conclude that the superior court did not err as a matter of law in dismissing Natasha's breach of contract claim.[4]

III

LTEC seeks an award of attorney fees and costs on appeal under RAP 18.1, which allows recovery of reasonable attorney fees or expenses on review if applicable law grants that right, and RAP 14.2, which grants the court discretion to award costs to the party that substantially prevails on review.

A prevailing party is entitled to appellate attorney fees when "'there is a contract, statute, or recognized ground in equity,'" that provides for such award. Umpqua Bank v. Shasta Apts., LLC, 194 Wn. App. 685, 699, 378 P.3d 585 (2016) (quoting Thompson v. Lennox, 151 Wn. App. 479, 491, 212 P.3d 597 (2009)). Natasha's breach of contract claim arises out of the PSA between Natasha, Latorre, and Christina, which allows for an award of attorney fees for any party suing under the agreement. Subject to

---

[4] Because we conclude that Natasha did not perform her own threshold duty under the contract and there was no "mutual assent" between Natasha and LTEC, we do not address LTEC's remaining arguments: (1) even assuming that there was mutual assent, the statute of limitations under RCW 4.16.080(3) bars relief to Natasha; (2) Natasha's damages were caused by Latorre, not LTEC; and (3) Natasha failed to join Latorre, an indispensable party.

compliance with RAP 18.1, we award LTEC its reasonable attorney fees and costs on appeal.

We affirm.[5]

_____ Mann, J.

WE CONCUR:

_____ Birk, J.

_____ Coburn, J.

---

[5] Natasha also argues that the superior court erred in excluding her supplemental declaration containing a statement from one of LTEC's agents stating that it did not prepare the second quitclaim deed. But even if true, Natasha still failed to prove that she satisfied the other terms of the agreement. In addition, because we conclude that Natasha's claim was properly dismissed on summary judgment, the superior court did not abuse its discretion in denying Natasha's motion for reconsideration.